594 A.2d 838

**FRATERNAL ORDER OF POLICE, FLOOD CITY LODGE NO. 86 and The Police Officers of the Collective Bargaining Unit represented by the Fraternal Order of Police, Flood City Lodge No. 86, by and through their Trustees Ad Litem, Richard P. Sabo and Edward F. Simbak, Appellants,**

v.

**The CITY OF JOHNSTOWN and Mayor Herbert Pfuhl, Jr., Appellees.**

Commonwealth Court of Pennsylvania.

Argued May 2, 1991.

Decided June 28, 1991.

Anthony C. Busillo, II, Harrisburg, for appellants.

Samuel F. Rizzo, Johnstown, for appellees.

Before McGINLEY and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

The Fraternal Order of Police (FOP), Flood City Lodge No. 86 and the Police Officers of the Collective Bargaining Unit represented by the FOP, by and through their Trustees Ad Litem, Richard P. Sabo and Edward F. Simbak, appeal from an order of the Court of Common Pleas of Cambria County, which dismissed their Complaint in Mandamus with prejudice, finding that the police officers of the City of Johnstown who were laid off from December 21, 1986 to January 15, 1987, were not entitled to the difference between their wages and the unemployment compensation they collected while unemployed for that time period.

The police officers of the City of Johnstown,[1] excluding the Chief of Police, Linda Weaver, were all members of the collective bargaining unit represented by the FOP.[2] By letter dated December 12, 1986, Mayor Herbert Pfuhl of the City of Johnstown (Mayor) notified all police officers, with the exception of the Chief of Police, that effective midnight December 31, 1986, they were being placed on indefinite layoff status because the City of Johnstown had failed to adopt a budget and to appropriate funds for any purposes including the payment of salaries to members of the police department.[3] Because there was no agreement between the Mayor and the police department to work without pay, the entire department, except for the Chief of Police, was

1. The City of Johnstown is organized under the Optional Third Class City Charter Law entitled Mayor–Council Plan A, Act of July 15, 1957, P.L. 901, 53 P.S. §§ 41401–41421.

2. Because this case was presented on a case-stated basis, the facts as presented were stipulated by both parties.

3. Exhibit C of the record is a typical example of one of those letters. It reads as follows:
   DUE TO THE CURRENT BUDGET CRISIS IN THE CITY OF JOHNSTOWN FOR THE YEAR 1987, EFFECTIVE MIDNIGHT, DECEMBER 31, 1986, YOU ARE HEREBY PLACED ON INDEFINITE LAYOFF STATUS.
   The letter is signed by Mayor Herbert Pfuhl.

laid off as of December 31, 1986. Some of the officers who were laid off had more seniority on the police force than the Chief of Police. No public meeting or vote was taken by the Mayor or City Council regarding the layoff of the entire police department prior to December 31, 1986. After January 15, 1987, all of the police officers of the City of Johnstown were called back to work.

Subsequently, on January 30, 1987, the FOP filed a Complaint in Mandamus alleging that the lay-off of the police officers was illegal and invalid because 1) the Chief of Police, who was less senior than some of the other officers who were laid off, had not been laid off as required by Section 4408 of the Third Class City Code;[4] 2) the sole authority to lay-off police officers was vested in the City Council and not the Mayor; and 3) pursuant to the requirements of the Sunshine Law, it was necessary that notice of the decision to lay off the police officers precede a public meeting and a public vote on that issue, and those requirements were not met.[5] The City and the Mayor filed Prelimi-

4. Section 4408 of the Third Class City Code, Act of June 23, 1931, *as amended,* P.L. 932, 53 P.S. § 39408. Although Section 4408 of the Third Class City Code, 53 P.S. § 39408, is a civil service provision, and the City of Johnstown is organized under the Optional Third Class City Charter Law, Section 305(1)(x) of the Optional Third Class City Charter Law, 53 P.S. § 41305(1)(x), provides in pertinent part:

Notwithstanding the grant of powers contained in this act, no city shall exercise powers contrary to or in limitation or enlargement of powers granted to the city by acts of the General Assembly which are:

(1) Applicable to a class or classes of cities in the following subjects:

(x) relating to civil service.

5. Mandamus is an extraordinary writ which lies to compel the performance of a ministerial act or mandatory duty. A petitioner who files a complaint in mandamus must establish that he is entitled to relief by showing that there is a clear and legal right to which he is entitled, there is a corresponding duty by the defendant from whom he seeks relief, and there is no other adequate legal remedy. *Porter v. Board of Supervisors of North Franklin Township,* 82 Pa.Commonwealth Ct. 440, 474 A.2d 1241 (1984). Mandamus will not lie to compel the performance of discretionary acts except where the failure to exercise discretion is arbitrary, fraudulent or based on an erroneous view of the law. *Carino v. Board of Commissioners of the County of Armstrong,* 79 Pa.Commonwealth Ct. 242, 468 A.2d 1201 (1983).

nary Objections to the FOP's Complaint, which the trial court overruled. The City and the Mayor then filed an Answer to the FOP's initial Complaint.

On February 12, 1988, the FOP filed a Motion for Summary Judgment which was argued on March 24, 1988, and denied on April 28, 1988. On December 1, 1989, the parties filed Stipulated Facts and Legal Issues for Submission On Case–Stated Basis. On June 21, 1990, the trial court issued an order dismissing the FOP's Complaint in Mandamus with prejudice, finding that there was no reduction in the police department in the sense contemplated by Section 4408 of the Third Class City Code, 53 P.S. § 39408, but rather, there simply was a total lack of a budget. Because Section 4408 of the Third Class City Code, 53 P.S. § 39408, did not apply to a total closure of the police department due to lack of appropriations, but only to reductions in the police force due to budgetary constraints, the trial court determined that the fact that lay-off notices were sent to all of the police officers, except the Chief of Police, was not illegal, invalid or unreasonable.

The trial court further concluded that the Mayor's action in sending lay-off notices was merely a confirmation of City Council's tacit lay-off in the form of City Council's failure to adopt a budget for 1987, including a wage and salary ordinance. Because Council's failure to adopt a 1987 budget occurred at meetings that were properly convened and noticed in accordance with the Sunshine Act, there was no violation of that Law as the FOP alleged. Finally, the trial court determined that the FOP was not entitled to reinstatement with back pay for all officers because, as the parties stipulated, there was no budget in place and no money to pay police officers' salaries during the layoff period. The FOP then filed an appeal from the trial court's decision, requesting this court to resolve the same issues which were raised and decided below.

Neither the City nor the Mayor have raised on appeal that mandamus should not lie for that reason.

■ The FOP first contends that the Mayor did not have the authority to lay off the police officers because that action was a reduction of the police force and could only be made by the City Council. The FOP's argument is flawed because it has incorrectly characterized the layoffs as a "reduction" in the police force. Rather than this being a reduction in the police force, when the City Council failed to pass a budget and appropriate funds for payment of police officers' salaries or anything else, the result was a shutdown of the City of Johnstown. Consequently, funds were not available to pay the salaries of *any* police officers, including the Chief of Police,[6] and the entire police department had to be shut down.[7] Because the Mayor lacked funds to pay the salaries of the police officers, he had no authority to allow the police officers to continue to work. Had the Mayor allowed the police officers to continue to work, the City of Johnstown would have been forced to pay the salaries of the police officers, who had not agreed to work without pay, and would have incurred an obligation to the City's budget in contravention of Section 2701 of the Third Class City Code, 53 P.S. § 37701.[8]

■ Further, as Chief Executive Officer of the City of Johnstown, only the Mayor had the authority to inform the police officers not to come to work because there were no funds appropriated for their wages.[9] His action then of sending layoff letters to all of the police officers was not to

6. At oral argument, counsel agreed that the Chief of Police had agreed to work without pay during the layoff period.

7. Section 1405 of the Third Class City Code, 53 P.S. § 36405, provides that no money shall be paid out of the city treasury unless the same shall have been previously appropriated by council to the purpose for which it is to be drawn, which shall be explicitly mentioned in the warrant therefor.

8. Section 2701 of the Third Class City Code, 53 P.S. § 37701, provides that no city and no municipal department thereof shall create any debt, except in pursuance of previous authority of law or ordinance.

9. Section 1202 of the Third Class City Code, 53 P.S. § 36202, provides that the mayor shall be the chief executive of the city. Further, Section 412 of the Optional Third Class City Charter Law, 53 P.S. § 41412, provides in pertinent part that the mayor shall supervise al¹ of the departments of the city government.

reduce the number of police officers, but instead, was to totally shut down the police department.[10]  Consequently, because the City Council did not appropriate any funds to pay the police officers' salaries, we find that the Mayor had the authority to shut down the entire department and notify the officers in the police department that they were laid off until further notice.[11]

The FOP also argues that the Mayor and/or the City Council violated the Sunshine Act because there was no public meeting or vote regarding the reduction of police officers prior to that action being taken.  However, there can only be a violation of the Sunshine Act when a public meeting takes place without notice or during an impermissible private session.  In this case, there is no contention that the layoffs were the result of an irregular meeting at which the City Council voted to reduce the police force or that such violations occurred at the meeting regarding the budget.  Because the City Council properly advertised and held a public meeting at which they discussed the City of Johnstown's budget and at which they voted not to pass the

10.  We also note that the parties stipulated the purpose of the Mayor's letters to the police officers was to enable them to collect unemployment compensation.  The police officers did collect unemployment as a result of those letters.

11.  In the alternative, the FOP argues that even if the Mayor had the authority to lay-off the police department, the Mayor violated Section 4408 of the Third Class City Code, 53 P.S. § 39408, because he failed to lay-off the Chief of Police who had less seniority than some of the other police officers who had been laid off.  Section 4408 of the Third Class City Code, 53 P.S. § 39408, provides in pertinent part the following:

*If it should become necessary to reduce the number of employees in said department for purposes of economy, seniority rights shall prevail,* and any and all removals for such cause or causes shall be from the members last appointed, and the member or members serving the shortest time shall be removed first. . . .  (Emphasis added.)

However, because the Mayor's actions did not merely reduce the number of police officers in the City of Johnstown due to budget constraints, but rather totally shut down the department due to a lack of appropriations of funds, and Section 4408 of the Third Class City Code, 53 P.S. § 39408, pertains only to reductions, that section is inapplicable.

proposed budget, we find that there was no violation of the Sunshine Act.

Our scope of review in a mandamus action is to determine whether the trial court abused its discretion, committed an error of law, and whether sufficient evidence exists to support its findings. *Randolph Vine Associates v. Zoning Hearing Board of Adjustment of Philadelphia*, 132 Pa.Commonwealth Ct. 452, 573 A.2d 255 (1990). Because the Mayor had the authority to lay-off the entire police department, the Chief of Police was exempt from such action and there was no violation of the Sunshine Act, we find that the trial court properly dismissed the FOP's Complaint in Mandamus with prejudice. Accordingly, the decision of the trial court is affirmed.

## ORDER

AND NOW, this 28th day of June, 1991, the Order of the Court of Common Pleas of Cambria County, dated June 21, 1990, No. 1987–235, is affirmed.